# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAMES GREEN,

      Plaintiff

v.

ROMEO ARANAS, et al.,

      Defendants

Case No.: 3:14-cv-00245-RCJ-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 75, 84

      This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

      Before the court is defendant Dr. Michael Koehn's motion for summary judgment. (ECF Nos. 75, 75-1 to 75-8.) Plaintiff filed a response. (ECF No. 83.) Dr. Koehn filed a reply. (ECF No. 85.) Plaintiff also filed a cross-motion for summary judgment (ECF No. 84), to which Dr. Koehn filed a response (ECF No. 86).

      After a thorough review, it is recommended that Dr. Koehn's motion be granted, and Plaintiff's motion be denied.

## I. BACKGROUND

      Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 16.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*) The court screened Plaintiff's amended complaint and allowed him to proceed with claims for First Amendment retaliation and Eighth Amendment deliberate indifference to serious medical needs against Dr. Koehn. Plaintiff alleges that Dr. Koehn adulterated his prescription

1 lotion and then discontinued his Ichthyosis treatment for months, which led to open wounds,

2 swelling in his upper and lower extremities, and infection. Plaintiff avers that after he filed

3 complaints and grievances against Dr. Koehn for contaminating his medications, Dr. Koehn

4 stopped his prescriptions and stopped chronic care for his ichthyosis. (ECF No. 34.)

5      Both parties move for summary judgment.

6                                  **II. LEGAL STANDARD**

7      The legal standard governing this motion is well settled: a party is entitled to summary

8 judgment when "the movant shows that there is no genuine issue as to any material fact and the

9 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

10 *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

11 evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

12 *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

13 of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

14 judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

15 other hand, where reasonable minds could differ on the material facts at issue, summary

16 judgment is not appropriate. *Anderson*, 477 U.S. at 250.

17      "The purpose of summary judgment is to avoid unnecessary trials when there is no

18 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

19 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

20 of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

21 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

22 one party must prevail as a matter of law"). In considering a motion for summary judgment, all

23 reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

*Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

Plaintiff suffers from Ichthyosis Vulgaris, which, according to Dr. Koehn, is characterized by dry, thick, scaly skin, due to the slowing of the skin's natural shedding process, causing excessive buildup of the protein in the upper layer of the skin. (Koehn Decl., ECF No. 75-2 ¶ 3.)

Plaintiff was prescribed Cetaphil moisturizing lotion as well as AmLactin lotion to treat this condition. (Koehn Decl., ECF No. 75-2 ¶ 4; ECF No. 77-1 at 21.) In September 2013, Plaintiff was reported for having hoarded his lotions. Dr. Koehn discontinued his prescription on September 23, 2013 due to hoarding and non-compliance. (Koehn Decl., ECF No. 75-2 ¶ 4; ECF No. 77-1 at 21.) On October 23, 2013, Dr. Koehn renewed the prescription and warned Plaintiff that further abuse would result in discontinuation of the prescription. (Koehn Decl., ECF No. 75-2 ¶ 4; ECF No. 77-1 at 21.)

On January 9, 2014, Plaintiff submitted an informal level grievance number 20062973178, asserting that a "rogue employee" put a contaminant in his prescribed AmLactin lotion. He asserted that this was the third time, and that he had previously filed a complaint with Nursing Director Gardener on September 22, 2013. He claimed that something "nefarious" was happening by a "staff member." He said that he had alerted Nurse Holmes (on January 6), Nurse

Rice (on January 8), and Nurse Mattinson (on January 9), that he believed the substance he received was not his prescription AmLactin lotion, but that a foreign substance had been added. (ECF No. 75-3; ECF No. 83-at 13-15.) D.A. Jones responded to the informal level grievance, stating that nothing had been added to the lotion, and she had personally checked the bottle. (ECF No. 75-3 at 6.)

Plaintiff submitted a first level grievance on February 19, 2014, stating that personally checking the bottle is useless because staff are incompetent; that the adulterated ingredient was not visible to the naked eye; and Jones had no expertise in the formulation of AmLactin. (ECF No. 83 at 16-17.)

On March 3, 2014, it was documented in Plaintiff's medical records that Plaintiff refused his lotions; his behavior regarding the lotions has been hostile; and he had been verbally abusive to staff for months. The nurse asked the doctor to consider discontinuing the medications as a result. (ECF No. 77-1 at 6.) In light of this staff note, Dr. Koehn discontinued the lotions. (Koehn Decl., ECF No 75-2 ¶ 6; ECF No. 33-1 at 5-6, 23.)

Dr. Koehn saw Plaintiff on March 7, 2014, April 11, 2014, May 2, 2014, June 28, 2014, July 18, 2014, August 15, 2014, and November 12, 2014. (ECF No. 77-1 at 5, 7-8.) There are no notations in the records from those visits about Plaintiff's skin.

Between March 7, 2014, and May 12, 2014, Plaintiff submitted four more grievances regarding discontinuation of the prescribed lotions: grievances: 20062975381, 20062976693, 20062978546, 20062978551; however, he did not complete the three levels of NDOC's grievance process for any of those grievances. (ECF Nos. 75-4, 75-5, 83 at 20-21, 26, 75-6, 75-7.)

On November 21, 2014, Plaintiff began refusing medical care, which included a refusal to take insulin and other prescribed medications, and he was admitted to the infirmary. (ECF No. 77-1 at 10-17.) As a result, Dr. Koehn did not examine him again until January 5, 2015. (Koehn Decl., ECF No 75-2 ¶ 11; ECF No. 77-1 at 18.) There are daily reports about his condition and monitoring during this period, but none mention any issues with his skin until December 31, 2014. (ECF No. 77-1 at 10-17.) At that time, a nurse noted that his arms and legs were extremely dry and scaley with cracking areas observed. There was no sign of infection and no bleeding. (ECF No. 77-1 at 17.)

Dr. Koehn examined Plaintiff on January 4, 2015, and prescribed the Cetaphil lotion. He advised Plaintiff to avoid further refusal or abuse of the lotion that would require the prescription to be discontinued or he would be admitted to the infirmary. (Koehn Decl., ECF No 75-2 ¶ 13; ECF No. 77-1 at 18, 26.)

**B. Retaliation**

Plaintiff avers that Dr. Koen discontinued his prescription lotions after Plaintiff filed complaints and grievances against Dr. Koehn for contaminating the lotions.

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id*. (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

An inmate must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the alleged retaliatory action. *Pratt*, 65 F.3d at 806-07. "[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and quotation marks omitted). A plaintiff's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citations omitted) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to the prior lawsuit); *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment").

Dr. Koehn states that when he discontinued Plaintiff's lotions on March 3, 2014, he had no knowledge that Plaintiff had filed a grievance about the lotions, and he did not become aware of the grievance until he reviewed Plaintiff's complaint in May 2014. (Koehn Decl., ECF No 75-2 ¶ 7.) Plaintiff initiated the grievance about the contamination of his medications on January 9, 2014 (ECF No. 83 at 13-18); however, the grievances were responded to at the informal, first and second levels by D.A. Jones, J. Garner, and Aranas. (ECF No. 75-3 at 2, 4, 6.) Dr. Koehn had no involvement in Plaintiff's grievance. Moreover, in his informal level grievance he states that he filed a complaint with Gardener, and that he notified Nurses Holmes, Rice, and Mattinson. He does not state anywhere that he complained to Dr. Koehn.

Plaintiff submits another grievance he filed asserting that the lotion was contaminated; however, once again, there is no evidence that Dr. Koehn had any involvement with the grievance. (ECF No. 83 at 19.)

Plaintiff provides no evidence that Dr. Koehn knew about his complaints of contamination of his lotion to support his claim that Dr. Koehn discontinued his lotions *because* he filed grievances and complaints about his lotion being contaminated. Therefore, summary judgment should be granted in Dr. Koehn's favor as to the retaliation claim, and Plaintiff's motion for summary judgment should be denied as to this claim.

**C. Eighth Amendment Deliberate Indifference to Serious Medical Needs**

**1. Alleged Adulteration of the AmLactin Lotion**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

8

omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Assuming, without deciding, that Plaintiff's Ichthyosis Vulgaris is a serious medical need, there is no evidence that Dr. Koehn was deliberately indifferent.

Dr. Koehn provides a statement in his declaration that he had no involvement in filling the prescriptions, and instead, this is the responsibility of the NDOC pharmacy. As such, Dr. Koehn had no ability to alter the content of prescriptions. (Koehn Decl., ECF No. 75-2 ¶ 5.)

In his response and cross-motion, Plaintiff provides no evidence that Dr. Koehn had any involvement in the alleged adulteration of his lotion. Plaintiff's grievance on this issue asserts that a "rogue employee" put a contaminant in his AmLactin lotion; and that something "nefarious" was happening by a "staff member." (ECF No. 83 at 13-18.) In his response and cross-motion, Plaintiff states that Director of Nursing Gardner and Warden Baker were contaminating AmLactin and giving it to Plaintiff. He does not assert that Dr. Koehn adulterated his lotion, let alone provide evidence to support this allegation.

Therefore, summary judgment should be granted in Dr. Koehn's favor as to this claim, and Plaintiff's motion for summary judgment should be denied.

### 2. Alleged Discontinuation of Lotions

Finally, Plaintiff alleges that Dr. Koehn acted with deliberate indifference when he discontinued Plaintiff's lotions.

Dr. Koehn argues that Plaintiff did not exhaust his administrative remedies as to his claim; Plaintiff's Ichthyosis Vulgaris does not constitute a serious medical need; and in any case, he was not deliberately indifferent to Plaintiff's condition.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1168.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that

1  impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to
2  comply with the administrative remedies process)).

3       NDOC's Administrative Regulation (AR) 740 contains NDOC's grievance process, and
4  therefore, provides the requirements to exhaust administrative remedies for inmates within
5  NDOC. AR 740 requires an inmate to proceed through three levels to exhaust: informal, first and
6  second levels.[1]

7       Plaintiff filed grievance 20062973178 and completed all three levels of the grievance
8  process; however, this is the grievance where Plaintiff complained that someone was adulterating
9  his lotion. This grievance was not about Dr. Koehn's discontinuation of his lotions. Therefore, it
10 did not serve to exhaust his administrative remedies.

11      Plaintiff filed four grievances about the discontinuation of his lotions: grievance
12 20062975381, 20062976693, 20062978546, and 20062978551. However, he did not complete
13 all three levels of the grievance process for any of these grievances. (ECF Nos. 75-4, 75-5, 75-6,
14 75-7, 80 at 20-21, 26.) Therefore, they did not serve to exhaust his administrative remedies.

15      In his response, Plaintiff does not come forward with evidence that he either exhausted
16 his administrative remedies as to this claim or that administrative remedies were unavailable to
17 him. Therefore, summary judgment should be granted in Dr. Koehn's favor as to this claim, and
18 Plaintiff's motion for summary judgment should be denied as to this claim.

19
20
21
22
23

---

[1] *See* AR 740 - Offender Grievance Procedure Final 4-28-22.pdf (nv.gov), last visited October 5,
2022.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Dr. Koehn's motion for summary judgment (ECF No. 75) and **DENYING** Plaintiff's cross-motion for summary judgment (ECF No. 84).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 6, 2022

_____
Craig S. Denney
United States Magistrate Judge